**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DOUGLAS STALLEY,

    Plaintiff,

v.                                        Case No: 6:14-cv-1074-Orl-28DAB

ALLSTATE INSURANCE COMPANY
and ALLSTATE INDEMNITY
COMPANY,

    Defendants.

_____

**ORDER**

This case is before the Court on Defendants' Renewed Motion to Abate Stalley's Bad Faith Claim or, in the Alternative, Motion for Leave to Amend Answer and Affirmative Defenses to Add a Counterclaim for Declaratory Relief (Doc. 34). As set forth below, Defendants' motion is denied to the extent that it seeks to abate this bad faith action and is denied without prejudice to the extent that it requests leave to amend.

**I.    Factual and Procedural Background**

This case arises from a June 2009 motor vehicle accident that has spawned at least three separate but related lawsuits. The accident involved a collision between a scooter ridden by Benjamin Edward Hintz and an automobile driven by Emily Boozer. Hintz suffered a head injury as a result of the collision, and the parties to this case—Hintz's guardian and Boozer's insurers—believe that Hintz's injuries were exacerbated by negligent medical treatment he received after the collision.[1]

---

[1] (See, e.g., Doc. 36 at 3 ("Plaintiff believes, as [do Defendants], that the medical professionals who treated Hintz after the collision negligently failed to timely diagnose and

Boozer was insured under an automobile liability insurance policy issued to her and her father by Defendant Allstate Indemnity Company with a $100,000 per person limit, and she was also insured under an umbrella liability insurance policy issued to her and her father by Defendant Allstate Insurance Company with a $1 million per occurrence limit. After the accident, Hintz requested that Defendants make their best offer, but Defendants allegedly ignored Hintz's request and even refused to confirm the amount of available coverage. (See Compl., Doc. 2, ¶¶ 17-18).

In November 2009, Plaintiff, as guardian of the property of Hintz, filed an automobile negligence action against Boozer and her father in state court.[2] That lawsuit resulted in a jury verdict and a final judgment against Boozer in August 2012 in the amount of $11,179,188.97.[3] During that case, Plaintiff successfully argued that the doctrine set forth in Stuart v. Hertz Corp., 351 So. 2d 703 (Fla. 1977), precluded Boozer from presenting evidence that the negligence of medical providers who treated Hintz after the accident caused or aggravated his injuries. Boozer was thus held liable for all of Hintz's injuries, including those that may have been caused by the negligence of the medical providers. Defendants then paid Plaintiff their policy limits of $1.1 million; the rest of the judgment remains unpaid.

Plaintiff then filed, also in state court, a separate medical malpractice lawsuit[4]

---

appropriately treat his head injury.")).

[2] Case No. 05-2009-CA-050806 in the Eighteenth Judicial Circuit in and for Brevard County, Florida.

[3] The jury's verdict for Plaintiff was $14,905,585.29, but it was reduced by twenty-five percent based on Hintz's comparative negligence.

[4] Case No. 05-2012-020556 in the Eighteenth Judicial Circuit in and for Brevard

2

against the medical providers, seeking recovery for the same injuries at issue in the suit against Boozer. Defendants and Boozer sought, and were granted, leave to intervene in that case, and they filed complaints asserting rights of equitable subrogation against the medical providers. The medical providers moved to dismiss those complaints on the basis that Defendants and Boozer could not bring equitable subrogation claims because they had not paid the judgment in full. The trial court granted those motions to dismiss and dismissed the equitable subrogation complaints with prejudice. Defendants and Boozer appealed that ruling to Florida's Fifth District Court of Appeal ("Fifth DCA").

Also in the medical malpractice case, Plaintiff filed a bad faith counterclaim against Defendants. The trial court granted a motion to strike that counterclaim without prejudice to refiling it as a separate lawsuit. Plaintiff appealed the state court's dismissal of his bad faith counterclaim to the Fifth DCA and also filed this suit asserting a bad faith claim against Defendants in state court in May 2014. This case was removed to this Court in July 2014. (Notice of Removal, Doc. 1).

After removal, Defendants moved to abate the case. (Mot., Doc. 8). Plaintiff opposed abatement but did not oppose a stay pending the outcome of Plaintiff's appeal of the dismissal of his counterclaim in the medical malpractice suit. (See Doc. 17 at 13). In August 2014, this Court stayed the case, denied without prejudice Defendants' motion to abate, and ordered the filing of periodic status reports. (See Order, Doc. 22).

In February 2015, Plaintiff moved to reopen this case and lift the stay, noting that he had voluntarily dismissed his appeal of the dismissal of his bad faith counterclaim in the

---

County, Florida.

medical malpractice suit. (Mot., Doc. 27). In April 2015, this Court granted that motion, lifted the stay, and reopened the case. (Order, Doc. 30). On June 30, 2015, Defendants filed the Renewed Motion to Abate (Doc. 34) that is now before the Court. Plaintiff responded in opposition to the motion. (Doc. 36).

Nine days after Plaintiff filed that response, the Fifth DCA issued its opinion in the appeal by Boozer and Defendants of the dismissal of their equitable subrogation complaints in the medical malpractice action. <u>Allstate Ins. Co. v. Theodotou</u>, Nos. 5D14-1291, 5D14-1352, & 5D14-1436, 2015 WL 4486578 (Fla. 5th DCA July 24, 2015).[5] In that opinion, the Fifth DCA concluded that the trial court erred in dismissing Boozer's and Defendants' equitable subrogation complaints. The court ruled that Boozer and Defendants are allowed to pursue claims against the medical providers even though the entire judgment from the automobile negligence suit has not been paid. This Court then ordered the parties to file supplemental memoranda as to the effect, if any, of that opinion on the Renewed Motion to Abate, (Order, Doc. 40), and the parties did so, (Docs. 41 & 43). On August 24, 2015, the 5th DCA denied a motion to stay mandate that had been filed by one of the medical providers in the appeal of Boozer and Defendants, (<u>see</u> Doc. 48-1), and on August 25, 2015, the Fifth DCA issued its mandate, (<u>see</u> Doc. 48-2).

## II. Renewed Motion to Abate

In their Renewed Motion to Abate, Defendants argue that this case should be abated "until . . . there has been an ultimate and final determination of damages for which its insured party is responsible." (Doc. 34 at 1). In their supplemental memorandum—filed after the issuance of the Fifth DCA's opinion in <u>Theodotou</u>—Defendants assert that this

---

[5] The day after the Fifth DCA's opinion was issued, Defendants submitted the opinion to this Court with a Notice of Supplemental Authority. (Docs. 37 & 37-1).

"final determination of damages will take place in the state court action now permitted by the Fifth DCA" and that this case should be abated until after that case is concluded. (Doc. 43 at 9). Plaintiff, on the other hand, maintains that there has indeed already been a final determination of Boozer's liability and that Plaintiff's bad faith claim is ripe and should proceed. The Court agrees with Plaintiff.

### A. The Fifth DCA's Opinion

In its opinion reversing the dismissal of Boozer's and Defendants' subrogation complaints in the medical malpractice action, the Fifth DCA framed the issue before it as:

> whether, under Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So. 2d 702 (Fla. 1980), an initial tortfeasor or her insurer may assert an equitable subrogation claim against a subsequent tortfeasor when: (1) the initial tortfeasor was precluded from bringing the subsequent tortfeasor into the original personal injury action under Stuart v. Hertz, 351 So. 2d 703 (Fla. 1977); (2) judgment was entered against the initial tortfeasor for the full amount of the injured person's damages, regardless of the initial tortfeasor's portion of the fault; and (3) that judgment has not been completely paid by the initial tortfeasor or her insurer.

Theodotou, 2015 WL 4486578, at *1. The court answered this question in the affirmative, concluding that "equity dictates that [Boozer and Defendants] be allowed to seek equitable subrogation from the [m]edical [p]roviders." Id. The Fifth DCA also certified the question to the Florida Supreme Court as one of great public importance.

The Fifth DCA recounted the development of Florida case law on related issues, including the 1977 Stuart decision, in which "the Florida Supreme Court held that an initial, active tortfeasor may not file a third-party complaint for indemnity against a treating physician whose subsequent medical negligence aggravated the plaintiff's injuries." Id. at *2 (citing Stuart, 351 So. 2d at 706). As explained by the Fifth DCA, "Stuart makes clear that an injured party can choose to sue only the initial tortfeasor and seek recovery for all injuries resulting from both torts . . . [o]r the injured party can first recover from the initial

5

tortfeasor for the injuries caused solely by the original tort and then seek recovery from the subsequent tortfeasors for the injuries caused, or aggravated, by their negligence." Id. (citation omitted) (citing Rucks v. Pushman, 541 So. 2d 673, 675 (Fla. 5th DCA 1989)).

The court noted that "[a]s a corollary, depending on how the injured party chooses to proceed, an initial tortfeasor may be held liable for the entirety of the plaintiff's damages, even if a subsequent independent tortfeasor is partially—or even mostly—responsible." Id. The Fifth DCA further noted that the Florida Supreme Court recognized the injustice of this result three years after Stuart in Lauderdale Lakes, holding there "that the proper remedy for initial tortfeasors affected by Stuart is equitable subrogation." Id. (citing Lauderdale Lakes, 382 So. 2d at 704).

The Fifth DCA concluded that "[t]his case presents the precise situation contemplated by" Lauderdale Lakes, with the wrinkle that Boozer and Defendants have not paid the entirety of the judgment. Id. at *3. The medical providers argued to the Fifth DCA that the failure to pay the judgment barred Boozer and Defendants from pursuing equitable subrogation, see id., but the court rejected that contention and concluded "that the right to equitable subrogation arises when payment has been made *or* judgment has been entered, so long as the judgment represents the victim's entire damages," id. at *4 (emphasis in original).

### B.   Arguments and Analysis

Defendants state in their supplemental memorandum that "Florida law requires the extent of the insured's responsibility for the damages be ultimately determined with finality before a bad faith claim may proceed." (Doc. 43 at 2). Plaintiff does not quarrel with this principle, but the parties disagree on whether the extent of Boozer's responsibility has been "determined with finality."

6

Defendants assert that "Boozer's true share may be less than $1.1 million" if the medical providers are determined to have caused the majority of the damages. (Id. at 3). Defendants further argue that their insurance coverage "applies only to damages [Boozer] is determined to be 'legally obligated to pay,'" and they contend that "[t]he Fifth DCA's [o]pinion makes clear [that] the determination of [Plaintiff's] damages that Boozer will be legally obligated to pay is not yet complete." (Id. at 4).

However, as Plaintiff cogently argues, Boozer has already been found to be "legally obligated to pay" over $11 million to Plaintiff and a judgment has been entered against her in that amount. As noted in the Fifth DCA's opinion, Boozer was "held liable for all of Hintz's injuries resulting from the accident" and the judgment "is fully enforceable by [Plaintiff] and has various severe consequences for Boozer." Theodotou, 2015 WL 4486578 at *4.

Defendants' assertions regarding the finality of the liability determination and of the judgment against Boozer miss the mark. A final determination of Boozer's liability to Plaintiff was made in the automobile negligence suit. The fact that Boozer and Defendants may be able to assert and recover on equitable subrogation claims against the medical providers in the medical malpractice suit does not affect Boozer's liability to Plaintiff or the finality of the judgment against Boozer. As aptly argued by Plaintiff, Boozer and Defendants may ultimately be able to lessen their financial burden through pursuit of equitable subrogation claims against the medical providers, but that does not affect Boozer's liability to Plaintiff, which has already been established in the automobile negligence suit. Nor does it affect the ripeness of Plaintiff's third-party bad faith claim against Defendants. The bad faith claim is indeed ripe because Plaintiff has obtained an excess judgment against Defendants' insured; that judgment was not appealed and is final;

and there is no dispute regarding coverage.

In sum, Defendants' assessment of the effect of the Fifth DCA's opinion on the ripeness of Plaintiff's bad faith claim is flawed. That claim is ripe and may proceed even before the conclusion of the medical malpractice suit in state court. Because no sound basis for abatement has been presented, Defendants' Renewed Motion to Abate must be denied.[6]

### III. Alternative Motion for Leave to Amend

In their Renewed Motion to Abate, Defendants argue in the alternative for leave to assert a counterclaim "for declaratory relief to determine the doctors' portion of fault." (Doc. 34 at 18). Plaintiff asserts in his supplemental memorandum that this alternative motion is now moot because the Fifth DCA has allowed Defendants to pursue their subrogation claim in Plaintiff's medical malpractice case. (See Doc. 41 at 10). In their supplemental memorandum, Defendants dispute whether their alternative motion to amend is moot but ask that the Court withhold ruling on it. (See Doc. 43 at 10). The Court will deny the motion without prejudice.[7]

### IV. Conclusion

It is **ORDERED** and **ADJUDGED** that Defendants' Renewed Motion to Abate Stalley's Bad Faith Claim or, in the Alternative, Motion for Leave to Amend Answer and Affirmative Defenses to Add a Counterclaim for Declaratory Relief (Doc. 34) is **DENIED in**

---

[6] This Court's conclusion as to the ripeness of the bad faith claim would be the same even if the Fifth DCA's opinion had not yet issued or if the Supreme Court of Florida reverses the Fifth DCA's decision in the future.

[7] The Court expresses no opinion on the merits of the motion for leave to amend and denies it without prejudice in accordance with Defendants' request that it not be ruled on at this time.

part and **DENIED without prejudice in part**. The motion is **DENIED** insofar as it seeks abatement of this case. The motion is **DENIED without prejudice** insofar as it requests leave to amend.

**DONE** and **ORDERED** in Orlando, Florida, on August 27, 2015.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record