UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DOUGLAS STALLEY, as Guardian of
the Property of Benjamin Edward
Hintz,
        Plaintiff,

v.                                 Case No: 6:14-cv-1074-Orl-28DAB

ALLSTATE INSURANCE COMPANY,
        Defendant.

## MEMORANDUM ORDER

Before the trial of this third-party bad faith case against Allstate Insurance Company, the Court ruled that it would not give one of Plaintiff's proposed jury instructions and that a more detailed order would follow explaining that ruling. (See Order, Doc. 150). This is that more detailed order.

I.    **Background**

On June 2, 2009, Benjamin Hintz suffered a head injury when his scooter was hit from behind by a Volkswagen Beetle driven by eighteen-year-old Emily Boozer ("Emily"). The Beetle was a listed, insured vehicle on Emily's father's Allstate automobile liability insurance policy, which had bodily injury limits of $100,000 per person/$300,000 per accident and property damage limits of $100,000 per accident. Emily's father lived in Melbourne Beach, Florida.

A week after the accident, on June 9, Allstate received a letter from a law firm stating that it represented Hintz. On June 12, Allstate initiated settlement efforts by tendering the $100,000 bodily injury limits to the law firm. The law firm responded on June 26 with a somewhat cryptic letter stating that Hintz would prefer "a global settlement of all [property

damage] and [bodily injury] claims" and asking Allstate to "please let [them] have [Allstate's] very best offer for a global acceptable mutual release of all [bodily injury] and [property damage] features for the claim." After receiving that letter, in early July 2009 Allstate retained attorney John Krentzman to represent it in settling the claim and also hired separate counsel to represent Emily.

Over the next two months, Krentzman corresponded with the law firm regarding settling the claim and requested confirmation of the amount of Hintz's property damage. Meanwhile, by late July Allstate had discovered that Emily may have been residing with her grandparents in Indialantic, Florida, on the date of the accident and that consequently she might be covered under her grandparents' $100,000/$300,000 Allstate automobile policy, their $1 million Allstate umbrella policy, or both. Allstate informed Hintz's lawyers of this development, but at no time did the law firm make a demand for the policy limits.

In early October, the law firm representing Hintz accepted $1,675.35 as the agreed amount of property damage but rejected the $100,000 bodily injury limits check that Allstate had sent in mid-June. Without notice to Allstate, the law firm filed suit against Emily on September 22, 2009—three months and twenty days after the accident. Although Emily was not specifically listed as a named insured or as a resident on her grandparents' umbrella policy, Allstate determined that Emily was covered by the umbrella policy as a resident relative and on January 12, 2010, tendered the $1.1 million policy limits.[1]

However, the law firm representing Hintz rejected that offer in February 2010 and proceeded with its negligence lawsuit against Emily in state court. Ultimately, a judgment

---

[1] Allstate also determined that Emily was not covered by her grandparents' automobile policy. The $1.1 million in coverage came from the umbrella policy and Emily's father's automobile policy.

2

of more than $11 million was entered against Emily, and Allstate paid $1.1 million toward that judgment. Plaintiff, as the guardian of the property of Hintz, then filed this suit against Allstate seeking to recover the unsatisfied portion of the final judgment, asserting that Allstate acted in bad faith in failing to settle Hintz's claim against Emily.

## II. The Jury Instruction Issue

As set forth in Florida's standard jury instructions and agreed by the parties, "[b]ad faith on the part of an insurance company is failing to settle a claim when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her interests." Fla. Standard Jury Instruction 404.4, Insurer's Bad Faith (Failure to Settle). Both parties proposed additional language from bad faith case law to incorporate into this instruction, and in its instructions to the jury the Court included much of the parties' proposed additional language, explaining the duties of an insurer and the fact that the issue of bad faith is determined under the "totality of the circumstances" standard. (See Court's Jury Instructions, Doc. 171, at 10–13).

The Court did not, however, include in the jury instructions all of the additions proposed by the parties. Pertinent to this Order, in his "Proposed Special Jury Instruction 3" Plaintiff proposed the following language:

> In deciding whether [Allstate] could have settled the claim of Mr. Hintz within its policy limits, any question about the possible outcome of a settlement effort that [Allstate] should have made but did not, should be resolved in favor of Mr. Hintz. For you[] to find otherwise, [Allstate] must conclusively prove that there was no realistic possibility of settlement within policy limits.

(Doc. 121-6 at 5 (footnotes omitted); see also Mem. of Law in Support of Pl.'s Proposed Special Jury Instructions, Doc. 138, at 4–6). Plaintiff relied principally on Powell v. Prudential Prop. & Cas. Ins. Co., 584 So. 2d 12, 14 (Fla. 3d DCA 1991), in support of this

3

proposed instruction. At a pretrial conference on May 20, 2016, the parties presented arguments regarding the propriety of this instruction, and the Court then requested further briefing on the issue. (See Mins., Doc. 143). After receipt of the parties' supplemental briefing (Docs. 147 & 148), the Court ruled that Plaintiff's proposed "Powell instruction" would not be given. (Order, Doc. 150, at 2). The Court now explains that ruling.

III. **Analysis**

The Court has jurisdiction over this case under 28 U.S.C. § 1332 based on the amount in controversy and the parties' diverse citizenship, and the sole claim at issue is a bad faith claim under Florida law. Thus, Florida substantive law governs, and "the jury charge must accurately state the law of" Florida. Tran v. Toyota Motor Corp., 420 F.3d 1310, 1312 (11th Cir. 2005). Where the Florida Supreme Court has not spoken on the topic at issue, this Court "must predict how [that] court would decide" the issue presented. Molinos Valle Del Ciabo, C. por A. v. Lama, 633 F.3d 1330, 1348 (11th Cir. 2011). "Decisions of the intermediate appellate courts—here, the Florida District Courts of Appeal—provide data for this prediction," and "[a]s a general matter, [this Court] must follow the decisions of these intermediate courts." Id.

In his proposed Special Instruction 3, Plaintiff urged this Court to instruct the jury regarding a "presumption" allegedly created by the decision of Florida's Third District Court of Appeal in Powell. However, the Court concludes that neither Powell nor any other binding authority supports the proposition that it is appropriate under Florida law to instruct a jury that it should "resolve any question about the outcome of settlement efforts" in favor of a plaintiff in a bad faith trial.

While Powell also involved a bad faith claim, the decision had nothing to do with jury instructions. The issue before the appellate court was whether the trial court erred in

4

granting a directed verdict in favor of the insurance company. After describing the question presented as "whether evidence that the claimant made no specific monetary demand, and subsequently rejected the insurer's tender of the policy limits, entitle[d] the insurer to a judgment as a matter of law without consideration of other circumstances," Florida's Third District Court of Appeal reversed and remanded for trial. 584 So. 2d at 13. The court held "that those facts are only two of a number of circumstances to be weighed by the fact-finder" and that thus, the trial court erred in granting a directed verdict. Id.

In the course of making that ruling, the Powell court noted, while discussing "a delay in settlement negotiations," that "[w]here liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations." Id. at 14. The court then stated: "Any question about the possible outcome of a settlement effort should be resolved in favor of the insured; the insurer has the burden to show not only that there was no realistic possibility of settlement within policy limits, but also that the insured was without the ability to contribute to whatever settlement figure that the parties could have reached." Id. Here, Plaintiff seized upon this language in proposing his Special Jury Instruction 3—the so-called "Powell presumption" instruction—and argues that "under Powell, it is presumed that Mr. Hintz's claim would have settled had Allstate engaged in timely settlement efforts" and that "[a]n insurer's burden in overcoming the 'Powell presumption' is a widely-recognized facet of Florida law." (Doc. 148 at 3). However, the cases Plaintiff cites for the existence of this presumption and supposed "wide recognition" of an insurer's burden in overcoming it are either not on point,[2] not binding precedent, or both. The Court rejects Plaintiff's assertion that this

---

[2] In addition to the cases mentioned elsewhere in this Order, in his papers or during

5

portion of <u>Powell</u> or any other binding authority supports the requested instruction.

To the extent Plaintiff bases his position on <u>Powell</u> itself, he ignores the procedural posture of that case—review of a grant of a directed verdict for the insurance company. This Court construes the relied-upon language from <u>Powell</u> as a statement of the burden borne by a directed verdict movant—which in that case happened to be the insurance company—rather than a statement of presumptions or burdens that apply in a jury trial of a bad faith case. It is well-established in Florida that

> [a] motion for directed verdict should be granted only where no view of the evidence, or inferences made therefrom, could support a verdict for the nonmoving party. In considering a motion for directed verdict, the court must evaluate the testimony in the light most favorable to the nonmoving party and every reasonable inference deduced from the evidence must be indulged in favor of the nonmoving party. If there are conflicts in the evidence or different reasonable inferences that may be drawn from the evidence, the issue is factual and should be submitted to the jury.

<u>Sims v. Cristinzio</u>, 898 So. 2d 1004, 1005 (Fla. 2d DCA 2005) (citations omitted); <u>accord</u> <u>Panoz v. Gulf & Bay Corp. of Sarasota</u>, 208 So. 2d 297, 299 (Fla. 2d DCA 1968) (noting that a party moving for a directed verdict "shoulders a heavy burden because he necessarily admits all material facts as attested by his adversary and also admits all inferences of fact favorable to the adversary that reasonably might be drawn from the evidence as a whole" (internal quotation and citation omitted)). The language from <u>Powell</u> upon which Plaintiff relies so heavily mirrors these directed verdict principles. The <u>Powell</u> decision did not involve jury instructions at all, and the opinion concludes with the well-recognized standard: "A verdict should not be directed where there is a conflict in the

---

argument Plaintiff also cited <u>Goheagan v. Am. Vehicle Ins. Co.</u>, 107 So. 3d 433 (Fla. 4th DCA 2012), and <u>Hartford Accident & Indem. Co. v. Mathis</u>, 511 So. 2d 601 (Fla. 4th DCA 1987). However, neither of these cases appears to bear on the issue addressed in this Order.

6

evidence on reasonable inferences to be drawn favorable to the non-movant." 584 So. 2d at 15.

There is a monumental difference between, on the one hand, a court being constrained to resolve issues in favor of a non-movant in ruling on a motion for a directed verdict and, on the other hand, telling a jury to resolve any question about the possible outcome of a settlement effort in favor of the insured. The latter is tantamount to directing the jury to reach a particular outcome. This Court does not read Powell as requiring or even suggesting such direction, which would create a sea change in the traditional respective roles of, and the rules governing, judges and juries.

Plaintiff also relies heavily on Snowden v. Lumbermens Mut. Cas. Co., 358 F. Supp. 2d 1125 (N.D. Fla. 2003), a federal district court case in which the court denied the insurer's renewed motion for judgment as a matter of law and alternative motion for a new trial. The Snowden court quoted the Powell language upon which Plaintiff relies and stated that "Florida law . . . treats the unwillingness of a victim to settle as a defense which the insurer must prove." 358 F. Supp. 2d at 1128. There, the insurer "explicitly raised this defense before the jury, but [it] was rejected." Id. at 1129. In discussing the fact that a settlement demand from the claimant within the policy limits is not a prerequisite to a bad faith claim, the Snowden court referred, without citation to any authority, to "the unlikely case where the insurer is able to conclusively prove the unwillingness to settle for the policy limits." Id. This is the apparent source of the "conclusively prove" language in Plaintiff's Proposed Special Jury Instruction 3.

To the extent Snowden construed Powell as creating the presumption advocated by Plaintiff here and to the extent it requires "conclusive proof" by an insurer of unwillingness

7

to settle in order to defeat a bad faith claim, this Court disagrees with Snowden.[3] Moreover, in the case at bar Plaintiff took the position that lack of willingness to settle is not an affirmative defense that Allstate was required to establish but that instead, an insurance company's averment of a lack of willingness to settle is merely a denial of Plaintiff's assertions—assertions that Plaintiff has the burden of proving. (See Doc. 138 at 1–4).[4]

---

[3] Plaintiff argued at the May 20, 2016 final pretrial conference that Snowden includes "an excellent analysis of where th[e] presumption came from," but this Court disagrees with that contention. The portion of Snowden upon which Plaintiff relies for this "analysis" cites no authority at all, see 358 F. Supp. 2d at 1128–29, and it follows a paragraph citing only Powell, id. at 1128. As explained elsewhere in this Order, this Court does not read Powell as creating a presumption. Another federal district court case cited by Plaintiff—Quigley v. Gov't Emps. Ins. Co., No. 8:03-cv-1349-T-26EAJ, 2008 WL 126598 (M.D. Fla. 2008)—relies on Snowden, and this Court disagrees with Quigley as well.

[4] "Affirmative defense" is defined as: "A defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." *Affirmative Defense*, Black's Law Dictionary (9th ed. 2009). Plaintiff agreed with and cited this definition in his Memorandum in Support of Proposed Special Jury Instructions, and he then advocated that lack of willingness to settle is a simple denial rather than an affirmative defense:

> . . . Allstate's assertions that it had no reasonable opportunity or realistic possibility of settling Mr. Hintz's claim within the policy limits clearly do not fit this definition [of affirmative defense]. The core of Plaintiff's case is that Allstate *could have* and should have settled Mr. Hintz's claim, had it acted fairly, honestly, and with due regard of the interests of its insured. If that allegation is true, then, perforce, Allstate must have had both a reasonable opportunity and realistic possibility of settling the claim. Put differently, if neither 'opportunity' nor 'possibility' existed, then Allstate could not have settled the claim within the policy limits.
>
> Because these two assertions merely refute the allegation in Plaintiff's complaint that Allstate "could have" settled Mr. Hintz's claim, the Court should treat them *as denials* rather than affirmative defenses.

(Doc. 138 at 3 (emphasis in original)). Plaintiff noted a disagreement among federal courts in Florida about whether lack of willingness to settle is a simple denial or an affirmative defense, (see id. at 2 (comparing Cadle v. Geico Gen. Ins. Co., No. 6:13-cv-1591-Orl-31GJK, 2014 WL 793339 (M.D. Fla. Feb. 27, 2014), and Batchelor v. Geico Cas. Co., No. 6:11-cv-1071-Orl-37GJK, 2014 WL 7224619 (M.D. Fla. Dec. 17, 2014), with Sowell v. Geico Cas. Ins. Co., No. 3:12cv226-MCR/EMT, 2015 WL 3843803 (N.D. Fla. June 20, 2015), and Lopez v. Allstate Fire & Cas. Ins. Co., Case No. 14-20654-Civ-Cooke/Torres,

Plaintiff explained that willingness to settle is part of "could and should have settled" in the definition of bad faith failure to settle, and he insisted that he bore the burden of proof on this point. Plaintiff vigorously argued this position both at the pretrial conference[5] and in his filings, insisting that the verdict form contain only one question—did Allstate act in bad faith?—rather than including a second question regarding an affirmative defense of unwillingness to settle. (Id. at 4). Thus, Plaintiff argued contrary to the "defense" aspect of Snowden, though he cites it for this proposition in his supplemental memorandum. (See Doc. 148 at 3–4 (citing and quoting Snowden)).

In sum, Plaintiff took the position here that he bore the burden of proving willingness to settle as part of establishing his bad faith claim; that Allstate was not required to establish unwillingness to settle as an affirmative defense; that the verdict form should not contain a question about an affirmative defense or unwillingness to settle; and that the jury should be instructed to construe all doubt on the issue in Plaintiff's favor and that Allstate had to "conclusively prove that there was no realistic possibility of settlement within policy limits."

---

2015 WL 5320916 (S.D. Fla. Sept. 14, 2015))), and held fast to his position that it is a simple denial, explaining that "it cannot be said that even if a plaintiff proves bad faith an insurer may still prevail if it proves that there was no realistic possibility of settlement," (id. at 5).

    This Court agreed with Cadle, Batchelor, and Plaintiff that unwillingness to settle is a denial rather than an affirmative defense but disagreed with Plaintiff's assertion of a presumption that then must be overcome by Allstate by "conclusive proof." Although the Court was initially puzzled by the position that Plaintiff took on the affirmative defense issue, after working though this question in more depth the Court now recognizes that through his creative stance Plaintiff indeed sought not only to place the burden on Allstate but also to elevate that burden from the ordinarily applicable "greater weight of the evidence" standard to a standard of "conclusive proof," with instructions to the jury that it essentially was required to find for Plaintiff on the issue.

    [5] At the May 20, 2016 pretrial conference, counsel for Plaintiff stated: "[A]nybody who thinks about it very hard and reads the standard instructions . . . would say [it is] not [an] affirmative defense. I have to prove that Allstate could have settled the claim, and that implicitly means they have a fair chance to settle the claim. That's unquestionably true."

9

In other words, Plaintiff advocated that Allstate not be required to attempt to prove unwillingness to settle by the greater weight of the evidence—the standard of proof that typically applies to both claims and affirmative defenses—but that Allstate instead be required to overcome a virtually unassailable "presumption" by "conclusive proof"—a standard that apparently was plucked from a sentence in Snowden that is supported by no authority and is a much higher standard of proof than "the greater weight of the evidence." This position is untenable and unsupported by binding precedent.

Plaintiff also cites two cases from Florida's Fourth District Court of Appeal in support of his contention that "[a]n insurer's burden in overcoming the 'Powell presumption' is a widely recognized facet of Florida law," (Doc. 148 at 3), but neither of those cases involved jury instructions and neither referred to a "presumption" at all. In Lee v. Progressive Express Ins. Co., 909 So. 2d 475, 477 (Fla. 4th DCA 2005), the court quashed an order that allowed discovery of attorney-client communications and in the course of doing so cited Powell for the proposition that "[i]f the insurer raises [the issue of an attorney's authority to settle the case] as a defense, it has the burden of proving that the claimant was unwilling to settle." Again, this notion of a "defense" was aggressively disavowed by Plaintiff in this case. And, in Barry v. GEICO Gen. Ins. Co., 938 So. 2d 613 (Fla. 4th DCA 2006), the insured appealed a jury verdict in favor of the insurance company, arguing in part that at trial the focus was improperly shifted to the motives of the claimant and her attorney in refusing the settle the case. In finding no abuse of discretion by the trial court in denying the insured's motion for new trial, the Barry court stated—citing Powell—that "the insurer has the burden to show that there was no realistic possibility of settlement within the policy limits" and—citing Berges v. Infinity Ins. Co., 896 So. 2d 665, 677 (Fla.

2004)—that "[t]his question is decided based upon the totality of the circumstances," with evidence of the conduct of the claimant and her attorney being relevant to that question. 938 So. 2d at 618. Like Lee, Barry mentioned a "burden" on the insurer—a position that Plaintiff has rejected—but not a "presumption." Thus, Plaintiff's effort to rely on these Fourth DCA cases as supporting a "widely-recognized Powell presumption" that must be overcome by "conclusive proof" is rejected.

Plaintiff also cites an unpublished and therefore non-binding[6] Eleventh Circuit case, GEICO Gen. Ins. Co. v. McDonald, 315 F. App'x 181 (11th Cir. 2008), in which the trial court's giving of an instruction like the one requested by Plaintiff was affirmed. In McDonald, the Eleventh Circuit stated that "[t]he district court's jury instruction was not an inaccurate statement of Florida law that misled the jury as it was taken directly from Powell." Id. at 183.[7] While not noted by either party here, in another unpublished, non-binding case the Eleventh Circuit affirmed the trial court's refusal to give a requested "Powell presumption" instruction. GEICO Cas. Co. v. Arce, 333 F. App'x 396, 398 (11th Cir. 2009).[8] Neither of these cases compels the inclusion of Plaintiff's proposed language, and again, they are not binding precedent anyway.

## IV. Conclusion

The authorities cited by Plaintiff do not establish the existence of a "presumption"

---

[6] See 11th Cir. R. 36-2 (providing that "unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority").

[7] Plaintiff also cites Thompson v. Cincinnati Ins. Co., No. 3:10-cv-318/RS-EMT, 2011 WL 1374982 (N.D. Fla. Apr. 12, 2011), which in turn cites McDonald in an order addressing a summary judgment motion.

[8] Review of the jury instructions given by the district court in Arce reveals that the district court did not instruct the jury that unwillingness to settle was a defense that had to be established by the insurer, nor did those instructions otherwise place the burden on the insurer to show lack of willingness to settle. (See Jury Instructions, Doc. 392 in M.D. Fla. Case No. 8:05-cv-00697-SCB-EAJ).

11

under Florida law in a jury trial setting regarding the possible outcome of settlement efforts. This Court does not read Powell as creating any such presumption; instead, as noted earlier, this Court construes the statement in Powell that "[a]ny question about the possible outcome of a settlement effort should be resolved in favor of the insured" as an accurate, well-established statement of the movant's burden on a motion for directed verdict—the context in which that statement was made. Plaintiff has identified no Florida state court decision discussing or approving a jury instruction informing the jury that it should resolve "any question about the possible outcome of a settlement effort" in favor of the insured. No binding Eleventh Circuit precedent to this effect has been brought to the Court's attention either. Furthermore, Plaintiff's proposal of language requiring "conclusive proof" by an insurance company to overcome the supposed "Powell presumption" is wholly lacking in support. Thus, this Court concludes that the portion of Plaintiff's proposed Special Instruction 3 quoted earlier in this order is not an accurate statement of Florida law in the context of jury instructions, and accordingly this Court concluded that it was not appropriate to include that proposed language in the jury instructions in this case.[9]

---

[9] On a final note, the facts of this case differ from those of Powell. In Powell, the claimant's attorney sent the insurer a letter nine days after the accident and two other letters within two weeks of the first, seeking to settle case within policy limits. 584 So. 2d at 13. The insurer did not respond to any of the letters, and by the time it tendered its policy limits two months after the accident, the claimant had already filed suit. Id. On those facts—and where liability was clear and injuries were so serious that an excess judgment was likely—the Third District Court of Appeal noted that an insurer "has an affirmative duty to initiate settlement negotiations" and then stated that doubts "about the possible outcome of a settlement effort should be resolved in favor of the insured." Id. at 14. Again, however, this last statement was made in the context of reviewing the grant of a directed verdict motion.
  Here, Allstate was not completely silent in the face of correspondence from the claimant's attorney. Instead, Allstate tendered its then-known policy limits within ten days of the accident, and when the claimant's attorney responded with a curious letter, Allstate hired counsel to negotiate with him and attempt to settle the matter. At trial, an issue was

DONE and ORDERED in Orlando, Florida, on June __10th__, 2016.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

---

whether the claimant's attorney was indeed willing to accept the policy limits in settlement of the claim if they had been offered earlier, but it cannot be said that there were no settlement efforts made by Allstate. The discovery of the $1 million umbrella policy certainly complicated matters, but all in all what Plaintiff is complaining about in this case is Allstate's failure to tender the policy limits sooner rather than a true failure to "initiate settlement negotiations." The case at bar also included issues regarding liability, coverage, and damages; with regard to damages, the claimant's attorney was not forthcoming about the seriousness of the claimant's injuries, and there was a factual dispute regarding when Allstate became aware of the extent of those injuries. Thus, even if Powell could fairly be read as creating a "presumption," arguably no such presumption would apply as a factual matter in this case in any event.

13